UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MELANIE S.,<br><br>                        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                        Defendant. | Case No. 25-cv-12147<br><br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT
(ECF NOS. 11, 12)**

## I.      Introduction

Plaintiff Melanie S. appeals the final decision of defendant

Commissioner of Social Security (Commissioner), which denied her

application for disability insurance benefits (DIB) and supplemental security

income (SSI) under the Social Security Act.  Plaintiff's application concerns

a closed period of alleged disability spanning from August 10, 2015,

through July 31, 2020.  ECF No. 7-2, PageID.1408.  Both parties have

consented to the undersigned conducting all proceedings under 28 U.S.C.

§ 636(c) and move for summary judgment.  ECF No. 9; ECF No. 11; ECF No. 12.

After a hearing below, an administrative law judge (ALJ) found:

1. Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine with scoliosis and radiculopathy, status-post surgical fixation at L4-5; degenerative disc disease of the cervical spine with scoliosis and stenosis; and obesity."  ECF No. 7-2, PageID.1412.

2. Plaintiff had no impairments that met or medically equaled a listed impairment.  *Id.*, PageID.1415.

3. Plaintiff had the residual functional capacity (RFC) to perform light work except: "she must avoid work at unprotected heights or around dangerous moving machinery; she cannot climb ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; she can occasionally reach in all directions, push, or pull with the upper extremities; she cannot drive in the course of employment; she can have no exposure to vibration; she can frequently handle or feel bilaterally; and she can have no exposure to temperature extremes."  *Id*.

Relying on the testimony from a vocational expert (VE), the ALJ found that there were jobs in significant numbers that plaintiff could perform, including positions as a children's attendant, usher, and school bus monitor.  *Id.*, PageID.1423.

2

## II.     Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[1] and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up).  The substantial-evidence standard does not permit the Court to independently weigh the evidence.  *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.");  *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir.

---

[1] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Under these standards, the Court denies plaintiff's motion and grants the Commissioner's.

**B.**

Plaintiff contends that the ALJ failed to adequately consider medical opinions from treating physicians Eric Kovan, D.O., and Abdulhassan Saad, M.D.  ECF No. 11, PageID.2591-2599.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.[2]  *Gentry*, 741 F.3d at 723, 727-29; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-43 (6th Cir. 2007).  "Even when not controlling, however, the ALJ must consider certain factors, including the

---

[2] The Court applies the treating physician rule since plaintiff filed her disability application before March 27, 2017.  *See Wolfe v. Comm'r of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 n.4 (E.D. Mich. Nov. 26, 2017), *adopted*, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017).

length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Rogers*, 486 F.3d at 242 (quoting Social Security Ruling (SSR) 96-2p).  This procedural safeguard permits "meaningful appellate review" and ensures that claimants "understand the disposition of their cases."  *Id.* at 242-43 (cleaned up).

The Court considers the ALJ's evaluation of Dr. Kovan's and Dr. Saad's medical opinions in turn.

## 1.

The ALJ accurately summarized Dr. Kovan's December 2015 opinion that plaintiff's spinal conditions, chronic pain, depression, and anxiety—as well as sedation from her medications—resulted in an inability to concentrate and rendered her "unemployable."  ECF No. 7-2, PageID.1420

(citing ECF No. 7-1, PageID.432-433).  Dr. Kovan also reported that even a

sit-down job would cause significant spasm in the lumbar spine.  *Id.*  The

ALJ accorded this opinion little weight, reasoning:

> Although Dr. Kovan's treatment reports reflect some significant
> issues with depression and anxiety, other evidence from
> [plaintiff's] mental health provider shows she was generally
> making good progress at that time and a subsequent
> consultative psychological examiner found in April 2016 that
> she had no difficulty comprehending and carrying out simple
> directions, performing repetitive routine, simple tasks, or
> comprehending complex tasks.  The statement about even a
> sit-down job causing significant spasm of the lumbosacral spine
> is also belied by evidence that she was providing childcare for
> her own son and babysitting 2 other young children on a regular
> basis during that period.

*Id.* (cleaned up).[3]

Plaintiff first argues that the ALJ did not consider the required

factors—namely, the length of her treatment relationship with Dr. Kovan,

who began seeing her in 2011.  ECF No. 11, PageID.2593, 2596.  Although

factors such as the length of the treating relationship should guide the

---

[3] The Commissioner's brief twice cites broad swathes of the record, at one
point spanning 367 pages.  ECF No. 12, PageID.2607, 2615 (citing ECF
No. 7-1, PageID.632-806, 1208-1273; ECF No. 7-2, PageID.1274-1403,
2168-2535).  True, those portions of the brief were based on the ALJ's
citations that included only the administrative exhibit numbers (*e.g.*, B25F)
without designating the page number of the cited medical record.  That is
no excuse.  The Commissioner's repetition of this practice was entirely
unhelpful and led the Court to waste valuable judicial resources tracking
down the relevant medical records.

ALJ's evaluation, he "need not perform an exhaustive, step-by-step analysis of each factor; [he] need only provide 'good reasons' for both [his] decision not to afford the physician's opinion controlling weight and for [his] ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom.*, *Biestek v. Berryhill*, 587 U.S. 97 (2019).

The ALJ did not expressly discuss the length of the treatment relationship, but he considered Dr. Kovan's treatment records from the closed period. ECF No. 7-2, PageID.1417-1418. And while the ALJ did not address Dr. Kovan's 2011 and 2012 treatment notes, those records predated the closed period onset date of August 2015. ECF No. 7-1, PageID.1170-1186; *see Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) (evidence from outside the relevant period "has little probative value unless it illuminates the claimant's health" during the relevant period). Plaintiff does not argue that they relate to her functional capacity during the closed period. Thus, whether the ALJ erred depends instead on whether he gave good reasons for assigning little weight to Dr. Kovan's opinion.

Plaintiff challenges the ALJ's rejection of Dr. Kovan's opinion that her depression and anxiety were debilitating and rendered her unable to

concentrate, citing Dr. Kovan's treatment notes documenting her psychological issues. ECF No. 11, PageID.2593-2594, 2596 (citing ECF No. 7-1, PageID.1161, 1163-1164, 1169). The ALJ discussed the cited records, noting Dr. Kovan's observations in late 2015 and early 2016 about "the emotional aspects of [plaintiff's] pain" and that "she was teary eyed and anxious in his office." ECF No. 7-2, PageID.1417. And the ALJ further acknowledged that Dr. Kovan's "treatment reports reflect some significant issues with depression and anxiety." *Id.*, PageID.1420. Yet the ALJ correctly observed that "other evidence from [plaintiff's] mental health provider shows she was generally making good progress at that time." *Id.*, PageID.1418, 1420. Plaintiff's mental health treatment records from June 2015 to May 2016 document that she was making good progress and was stable on medications. ECF No. 7-1, PageID.636-648. Later records also show that plaintiff's psychological conditions "generally remained stable with some increased symptoms at times of situational stressors." ECF No. 7-2, PageID.1418 (citing ECF No. 7-1, PageID.596-605, 616, 901-914, 950-965, 1114-1115, 1123-1124, 1127). Thus, plaintiff's position that the ALJ rejected Dr. Kovan's opinion solely in favor of a one-time consultative examiner's opinion ignores the ALJ's reliance on these treatment records. *See* ECF No. 13, PageID.2620-2621.

8

Plaintiff next faults the ALJ for rejecting Dr. Kovan's opinion because it conflicted with a 2016 opinion by consultative examiner Hugh Bray, Ph.D. ECF No. 11, PageID.2594.  In 2016, Dr. Bray made relatively unremarkable mental status examination findings, noting only mildly depressed mood and an occasionally pleasant and sullen affect.  ECF No. 7-1, PageID.531.  He concluded that plaintiff had no difficulty comprehending and carrying out simple directions; performing repetitive, routine, simple tasks; or comprehending complex tasks.  *Id.*, PageID.532.  Dr. Bray's 2016 opinion aligns with the ALJ's conclusion that plaintiff's mental conditions were non-severe and resulted in no functional limitations.  *See* ECF No. 7-2, PageID.1414, 1419-1420.

Plaintiff contends that the ALJ failed to discuss a 2023 opinion from Dr. Bray.  ECF No. 11, PageID.2594.  In 2023, Dr. Bray again made normal mental status examination findings, noting only that plaintiff's emotional reaction was reserved, her mood was apathetic, and she needed to be in mental health treatment.  ECF No. 7-2, PageID.2550-2551.  Dr. Bray found that plaintiff's ability to relate to others was mildly impaired; her ability to understand, remember, and carry out tasks was mildly impaired; her ability to maintain attention, concentration, persistence, and pace was mildly

9

impaired; and her ability to withstand the stress and pressure of full-time work was moderately impaired.  *Id.*, PageID.2552.

The ALJ detailed both of Dr. Bray's evaluations in concluding that plaintiff's psychological conditions were non-severe because they caused only mild limitations in paragraph-B criteria.  *Id.*, PageID.1413-1414.  And the ALJ assigned "some weight" to the opinions from state-agency psychological consultants, including Dr. Bray's.  *Id.*, PageID.1420 (citing Ex. B5F and B27F).  The ALJ credited Dr. Bray's findings "to the extent they are generally supported by [plaintiff's] objective findings when they were performed," but assigned greater weight to an opinion from another consultant who reviewed plaintiff's 2016 function report and other medical records.  *Id.*  Plaintiff does not engage with this analysis or explain why it is flawed.  Nor does she explain how an assessment from three years after the closed period of disability "illuminated" her condition during the relevant period.  *See Grisier*, 721 F. App'x at 477.

Plaintiff also challenges the ALJ's conclusion that her purported inability to perform a sit-down job was "belied by evidence that [plaintiff] was providing childcare" for her son and two other children regularly.  ECF No. 11, PageID.1420.  But an ALJ may evaluate whether a treating source's opinion aligns with the evidence of a plaintiff's daily activities.  *See*

SSR 96-2p ("[A] treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion."); *see also Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) (affirming an ALJ's reasons for discounting treating physicians' opinions, including that the plaintiff engaged in significant daily activities and maintained part-time employment).  The ALJ discussed that plaintiff earned $9,622 in 2015 and $9,262 in 2016 from babysitting two children.  ECF No. 7-1, PageID.1411-1412 (citing ECF No. 7-2, PageID.1745-1746).  Plaintiff does not dispute this evidence.

Plaintiff contends that Dr. Kovan's opinion that she could not perform a sit-down job aligns with Dr. Saad's opinion and treatment notes.  ECF No. 11, PageID.2595.  But the ALJ properly found that Dr. Saad's opinion was also entitled to little weight, as discussed below.  ECF No. 7-2, PageID.1421.  An ALJ is not required to adopt limitations from multiple treating source opinions that conflict with other substantial evidence simply because those opinions align with each other.  *See Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 386152, at *8 (W.D. Mich. Feb. 2, 2016).

11

**2.**

Plaintiff next challenges the ALJ's evaluation of Dr. Saad's April 2019 opinion.  ECF No. 11, PageID.2597-2599.  The ALJ accurately summarized Dr. Saad's opinion about plaintiff's functional limitations.  ECF No. 7-2, PageID.1421 (citing ECF No. 7-1, PageID.1142-1145).  The ALJ assigned this opinion little weight because:

> When asked to identify the clinical findings and objective signs in this medical source statement, Dr. Saad provided no response, and most of this information regarding her limitations such as being incapable of even low stress jobs conflicts with other evidence such as her own testimony that she was still engaging in babysitting for self-employment income at that time and that she was spending 8 hours a day on her feet just a few months later since she started a new job.

*Id.* (cleaned up).  Earlier in the opinion, the ALJ also noted:

> [Plaintiff's] intermittent chronic back pain generally remained stable with medication provided by Abdulhassan Saad, M.D., until he completed the aforementioned medical source statement at the request of her representatives in April 2019.  It is further noted that Dr. Saad's comments indicate he spent more than 20 minutes discussing that form with the claimant in filling it out and no clinical findings or objective signs were identified.

*Id.*, PageID.1419 (cleaned up).

Plaintiff contends that the ALJ failed to consider Dr. Saad's treatment notes supporting his opinion and cites those medical records.  ECF No. 11, PageID.2597-2598 (citing ECF No. 7-1, PageID.1074, 1228-1230; ECF No.

12

7-2, PageID.1288, 2211-2212).  Plaintiff notes that Dr. Saad twice advised her in October 2018 to avoid strenuous exercise or doing excessive work for her back pain.  ECF No. 7-1, PageID.1074, 1230.  And in September 2019, Dr. Saad recommended wearing compression stockings and to elevate plaintiff's legs "whenever possible" to treat the pain and swelling she experienced when on her feet eight hours a day at a new job.  ECF No. 7-2, PageID.1208-1212.[4]

Although the ALJ did not separately discuss each of these appointments, he considered the records and correctly noted that Dr. Saad observed that plaintiff's back pain remained stable.  *Id.*, PageID.1419.  Dr. Saad stated in two records that plaintiff's pain was "stable with medication" and that the "pain resolves with pain medication, nothing aggravates it."  ECF No. 7-1, PageID.1070, 1225.  Dr. Saad's physical examination findings were also consistently normal, including on the date he counseled

---

[4] Dr. Saad's October 2018 observation of left leg pain and swelling and his advice to take frequent walks after sitting for 30 minutes and to wear compression stockings concerned a varicose vein, which was not claimed as a disabling impairment.  ECF No. 7-1, PageID.81, 1228-1230.  Likewise, Dr. Saad recommended in February 2019 to wear wrist braces for carpal tunnel, which was also not an allegedly disabling impairment.  ECF No. 7-2, PageID.81, 1285-1288.  "[W]hen a claimant fails to allege disability based on a given condition, an ALJ need not investigate that condition."  *Justice v. Comm'r of Soc. Sec.*, No. 21-cv-10503, 2022 WL 16709719, at *7 (E.D. Mich. July 11, 2022), *adopted*, 2022 WL 12419673 (E.D. Mich. Oct. 21, 2022) (citing *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003)).

plaintiff for 20 minutes about providing an RFC opinion. *Id.*, PageID.1073, 1228, 1235, 1240, 1245-1246, 1250-1251, 1256, 1262, 1267, 1272; ECF No. 7-2, PageID.1277, 1282, 1288, 1293, 1298, 1302-1303, 1308. Dr. Saad's unremarkable physical examination findings continued through July 2020. *See* ECF No. 7-2, PageID.2171, 2184, 2188, 2197, 2206, 2211, 2481-2519.

The ALJ also accorded Dr. Saad's opinion little weight because plaintiff was still providing childcare for two children in April 2019 and in September 2019 reported that she spent eight hours a day on her feet at a new job. *Id.*, PageID.1412, 1421. The ALJ's reasoning is supported. *See id.*, PageID.2208; ECF No. 7-1, PageID.56-60. Plaintiff offers no argument that this rationale was flawed.

### C.

The Court **DENIES** plaintiff's motion for summary judgment (ECF No. 11), **GRANTS** the Commissioner's motion for summary judgment (ECF No. 12), and **AFFIRMS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 8, 2026

14

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 8, 2026.

<u>s/Caitlin Shrum</u>
CAITLIN SHRUM
Case Manager